Okay, the next case is number 17-2235, Consolidated Emotions, Waymo LLC v. Uber Technologies, Mr. Hurley. Good morning, and may it please the Court. And let's try and stay on the issues of these appeals or two motions. Absolutely, Your Honor. I know Mr. Lewandowski's name was mentioned quite a bit, and I completely agree that the crux of this consolidated appeal is simply whether the common interest privilege applies. Is that what you're relying on, is the common interest? Correct. And it's whether the common interest privilege applies to a factual and forensic investigation that was conducted and overseen by litigation counsel representing parties on opposite sides of a transaction, who had entered into a common interest and joint defense agreement, and who jointly commissioned this factual investigation with an explicit aim of assessing litigation exposure and preparing defenses to that litigation that they were jointly anticipating would ensue if the acquisition were fulfilled. If Mr. Lewandowski and Uber share a common interest in making sure the documents aren't produced, why did they leave it to an interviewer to argue their case? Your Honor, I don't know that I can answer for them, but I would say this. My understanding of the Mohawk decision, they did, Uber, as the Court I'm sure knows, did make objections to the magistrate judge's findings. They pursued those final judgment to seek a remedy. They are in a position to do that. But beyond that, I do have to ask them. The decision below, the crux of my argument is that the decision below, which holds that there was no common interest privilege that attached to this factual investigation, including the time this information was obtained, there was not. There were opposing interests, or at least... That's correct, Your Honor. In a subsequent ruling, the magistrate judge, and now affirmed by the District Court, held that at the time that the court call agreement was signed on April 11th, that she has held that there is a valid common interest privilege, which it appears attaches to this very same factual investigation, which preceded, in fact, that the Strauss investigation, the final report, wasn't completed until August, which is months after the court has now found there was a valid common interest privilege. We think that recent ruling, upheld by the district judge, essentially reveals the fundamental legal error that the courts below made, which is that unless the parties have reached some binding obligation to either proceed with the transaction or indemnify their counterparty, parties negotiating a commercial transaction simply cannot have a sufficient commonality of until the deal is sealed, the parties cannot set their lawyers to the task of, in a privileged fashion, exploring the facts, assessing litigation exposure, and assessing what are viable defenses to this litigation. Now, Waymo's response to what you're saying right now is that the report was commissioned well before the time there was no common interest. In fact, that's what the court found. So that there might have been a common interest agreement after the book call agreement was signed, it doesn't seem to relate back, in my view. Well, I understand that argument, and I think it's fundamentally a non sequitur, and here's why. The fact that parties who share a common legal interest might, as they're negotiating a transaction, call for a privileged investigation to explore the nature of that potential litigation they would face, does not thereby render that investigation non-privileged. It is true when the term sheet... They had different interests at the time, is what the district court said, right? I think that's an unrealistic reading of the position of the parties at the time that the Strauss investigation commenced. As the court knows, there was a term under discussion that would call for indemnification, and the parties' case law is clear that that doesn't defeat the possibility of a common interest privilege. But in connection with the Strauss investigation, my client had every incentive to disclose everything, words and all, because that factual record that was being created, both to assess the risk and the litigation defenses, but it was also contemplated that it would set the record for what the scope of indemnification would be. Also, the fact that these are very technical issues, and that's why Strauss Friedberg was hired, an expert forensic accountant, to evaluate the record and help the lawyers, as the Upjohn case says, step one is to evaluate, sift through the facts, and decide what is legally relevant. This record was something that could inform Mr. Lewandowski, as well as Uber, that this deal was too risky to go forward. Let me ask you another question, which is, the district court also said that the common interest doctrine itself didn't create a privilege, it just protected it, and so where does the privilege originate from when Strauss was an attorney of Mr. Lewandowski's? Mr. Lewandowski wasn't interviewed for the purpose of seeking legal advice, and so the district court said there was no privilege to begin with. Yes, so we think that was also legal error to hold that there must be some pre-existing privilege that only then is later shared in the common interest group. The cases we've cited, the Gonzales case, which is a leading case in the Ninth Circuit, the Schwimmer case from the Second Circuit, the Austin case in the Ninth Circuit, which relies on Schwimmer, and the Henke case in the Ninth Circuit, all make clear that a common interest agreement, if it is a valid one, establishes an inherent attorney-client privilege relationship between each of the parties and the lawyers for the parties. And therefore, in Schwimmer, the court held that one defendant talking to an expert hired by another defendant, that was privileged. And even Gonzales makes clear that there's no need for your own attorney to be sitting next to you when you're talking to counsel or agent for counsel of another attorney. So long as there is a valid common interest privilege between and among the parties, those communications are allowed and encouraged, and so long as they're maintained as confidential and not waived, they are privileged. Let's talk a little bit about jurisdiction. Do you contend that the district court's orders were final decisions? The orders being challenged here, under the doctrine as I understand it, I don't think they are final decisions. So then we have jurisdiction over certain interlocutory orders. Did the district court certify these orders for appeal? No. What's our basis for jurisdiction? They're not admiralty cases. They're not injunction cases or receivership. Well, certainly a basis for appeal is mandamus. And as to one of the decisions, the one where the motion was directed at the party, we concede that our only jurisdiction is mandamus. As to the order... Was Strolls hired? He's not an attorney. He's an accountant. Strauss-Friedberg is a very large forensic and investigative firm. It has many, many different specialties. Was it hired by Levandowski or his attorney? He was not engaged specifically by Mr. Levandowski's attorney. However, I do think that is another red herring as a factual matter. He was engaged, just as in Schwimmer, by counsel for other parties to the joint defense agreement. The fact of who engages the particular consultant has really no significance as to whether or not those communications are thereby privileged. You don't believe that the common interest doctrine is a stand-alone form of privilege, right? I believe that it is, under controlling Ninth Circuit precedent, recognized to be a... And I think under this court's holding in the in-rate regents of the University of California as well, it is a variant and an extension of the attorney-client privilege. It does not require... You're not saying just... I thought you were saying it was an exception to the waiver rule. It is an exception to the waiver rule, but it needs to be understood in a more nuanced way. Typically, if I am meeting with my counsel and there is somebody present who is not a lawyer, that's a waiver.  What I'm saying is there's no requirement that there first be a document or a communication that's privileged and then only later shared with the common interest group. It is the attorney-client privilege. It is a non-waiver doctrine, but it allows for this extension of the privilege among the common interest group. Briefly put, the two fundamental legal errors in this case, which were that there needs to first be a binding obligation before there can arise a valid commonality of interest to support the privilege, is completely inconsistent with settled precedent, including this court's decision in in-rate regents of California and many others that we cite in our brief. The second legal error... I see my time is short. The second legal error was the court's conclusion that simply because this communication to Strauss-Friedberg had, in addition to a litigation purpose, had a business purpose. We don't dispute that, that the mere presence of a business purpose eviscerates the protections of the common interest privilege. This is very clear that this was the dispositive fact that the entire weight in this opinion was placed on the fact in the alternative holding that this investigation was called for under the term sheet. What about the court's finding that the Strauss report, you know, the magistrate judge's conclusion after reviewing it in camera, that the purpose of the report was not... I guess the report was due diligence. It wasn't for these other purposes that you're saying. I know the reference in the opinion. I have certainly read the report myself. I don't read that as her finding in a way that she's placing great reliance on. I think the problem here is that a report that does a good job of assessing litigation risk and laying the factual framework for lawyers to provide legal advice looks very similar to a report that would be done purely for business reasons. But in this case, it is uncontroverted. There are six declarations that state without contradiction that the parties here already had a common interest agreement in place and that they explicitly engaged Strauss-Friedberg and guided the focus of their investigation. The court found that the weight of the evidence did not support the validity of those declarations. I think the court did say that and found that they were not credible but based on a red herring because, in part, because they didn't focus on the fact that there was also another business purpose. But that goes to the heart of the error. The fact that there is another overlapping business purpose under governing law does not mean that the common interest privilege evaporates. There's very well-settled doctrine about dual-purpose communications. And in the Ninth Circuit, the Ninth Circuit applies district courts and magistrate judges in the court a variety of tests, whether it be solely commercial, because of litigation, or primary purpose. The fundamental and fatal error in the court's factual finding is that she undertook no effort to weigh the relative significance of the commercial or litigation purposes. It was simply asking the wrong question, which is, is there a business purpose, and stopping. I'd like to move to the other side, and I will say this to everybody. Thank you very much. Good morning, Your Honors. Mr. Verhoeven. This appeal, first of all, the only way it can be heard by this court is a mandamus, which requires a clear finding of clear error and also a finding of no adequate remedy on appeal. And neither of those elements can be met in this case. Virtually all the arguments in the briefing, at least, are disagreements of the fact finding of the district court. And there's no way that those fact findings are clearly erroneous under the standard that this court has to use. In fact, Judge Stroh… Well, if the court was in error on appeal, the appellate panel can order a new trial without the admission of that report. Is that not correct? That's correct. That goes to the second element. And on the second element, just look at the two appeals. The same arguments are being made by the defendants, for which there's no appellate jurisdiction right now because it's non-final. And you heard counsel explain that the rational reason they're not taking the appeal right now is because the way it's non-final, and you do it the normal way. And you take an appeal out with the appellate courts. And the Supreme Court of the United States has said that post-judgment appeals are sufficient on rulings concerning attorney-client privilege. And so right there, they don't satisfy the second prong of mandamus. But on the findings of fact, which is most of what this appeal is about, disagreements on the findings of fact, I think it's notable… I think Judge Stoll asked this question about the in-camera submission of the diligence report, which is the subject of the motion to compel. The district court had that diligence report in camera. And the district court referenced that and relied upon that in making the district court's factual findings. But this diligence report, the entire subject of these motions, is not in the record on appeal. The appellant didn't even bother to present that to this court in camera so that the court could even look at one of the main bases that the district court used in order to make the district court's findings a fact. So this court can't even review it under this record because the record is totally incomplete as to the major… the subject of the appeal. So… Can I ask you for a minute about the argument about the district court erred by not delegating, by not providing de novo review of the magistrate judge's ruling on the constitutional issue? Yes, Your Honor. How do you respond to that? Because I look at the opinion and it doesn't necessarily read as if it's a JDA-19. It doesn't read as if it's de novo appeal. Yes, Your Honor. So, first of all, Lewandowski below… It should be noted, by the way, that Lewandowski was granted intervention below, and so even Lewandowski could probably appeal. It wouldn't be a straight-on appeal, but most likely Lewandowski would be granted an appeal here as to the issue of adequate remedy after close judgment. But on de novo review, Lewandowski argued below only for this argument under Fisher versus the United States. But the Fisher argument applies only to the extent that he prevails in establishing his attorney-client in common law and for his privileges in the first instance. So the district court held that those privileges do not apply here, and Lewandowski presents no rationale for applying de novo review of those rulings, on those privileges. So the argument is premised on a finding by the district court as to attorney-client privilege, and they're not entitled to de novo review on the attorney-client privilege. The court finds there's no attorney-client privilege that Fisher's inapplicable. And so that's our response. Going to the common interest doctrine specifically, the district court provided three reasons for why it doesn't apply. First, this appears to be the legal argument that they're making, is that there was no attorney-client privilege in the first place. So if there's no privilege in the first place, the common interest doctrine doesn't apply. The common interest doctrine is an exception to the waiver rule. It's an alternative argument. It's an alternative argument. So rather than whether it depends on the attorney-client privilege, is that so? The law is that if the privilege communicate, even if you have a unity of interest, if you're not exchanging attorney-client privilege communications, or if you're not, I'm sorry, if you're not disclosing a privilege conversation to the other, then the doctrine doesn't even come into place. Because the doctrine concerns a waiver of the attorney-client privilege and the exception to that waiver. So under the law, if you're not dealing with communications that are attorney-client privilege, then common interest exception to the waiver of attorney-client interest simply is inapplicable. And that's what the law says. And the district court found that there was no attorney-client privilege. And the challenge to that is not based on the law of attorney-client privilege. It's based on the court's fact-finding. And the court found that the facts did not meet the standard for attorney-client privilege. That the communications for the diligence report were not for the purpose of obtaining legal advice. That Mr. Lewandowski was providing factual information to an investigator hired by the defendants in an arrangement that was, the results of which, would determine whether the defendants moved forward. And beyond that Stroh's report, there was no obligation to either party to proceed further. In fact, the term sheet that provided for the diligence report and the inspection did not expressly provide it. That it provided no obligations on either party. I'm digressing now to the unity of interest issue. They're overlapping. But the communications were not in confidence for the purpose of obtaining legal advice. Those are the factual findings. And there's no clear error in those factual findings. So that in itself, the fact that there's no attorney-client privilege, is dispositive. Common interest doctrine doesn't apply if there's no attorney-client privilege. So that's what the court found as its first basis. And there's no error there. Even beyond that, the court found that there was no common interest. And the reason the court did that... But they have argued in their briefs error as far as privilege is concerned. It's not being presented, wasn't presented in the argument in chief here. So it relies on the common interest. But I didn't see any waiver, to call it that, of asserting privilege. Well, the court found that there was no common interest. Yes, that was what the court found. Yes. And so that's before us. Right. But the challenge that they're making is to the fact findings of the district court. Yes. This court will review that only for clear error. And in this case, the fact findings are not erroneous under any standard. The facts show, the court found, that before any acquisition, before any obligations, the defendants retained this third party, Strohs, who basically became their agent. And Otto, which was the company in which Mr. Levandowski worked, agreed to, with Uber, to engage in a process where a... This is the words in the term sheet. Independent third party was to conduct a factual investigation and bring forth the results to look into a number of things, one of which was whether there were any previous bad acts by Mr. Levandowski. And the arrangement was Mr. Levandowski was supposed to supply them things that would not be in his interest to disclose. He had to supply them honestly with all bad acts that he'd engaged in. And so Mr. Levandowski, at that period of time, was facing a decision that was not in the same interest as Uber. His decision was, I can tell the truth, but that really exposes me to liability if it gets out. So he doesn't want to really do that. That's certainly not the same interest as Uber. Uber wants to know that information. Levandowski doesn't want to disclose it. But he has to balance that against possibly making millions and millions of dollars if the transaction goes through. And so his interests are, I really want to make this transaction go through because I'll make a bunch of money. But if I do that, there's a risk that I might be found liable for misappropriating trade secret information under this bad acts clause. And so there were clearly different interests involved in the discussion around the diligence report. And the court also found that there were no obligations as of the time that the report was commissioned. And the reason for that is the term sheet, which expressly says that this term sheet does not obligate any other parties except for a couple of provisions that are totally irrelevant to this appeal. So you see the cases cited in the brief regarding acquisitions and transactions. And there's different shades based on the different facts among those decisions. But our facts are very clear. They're very on one side because there weren't some obligations. There were no obligations. And there weren't, it wasn't like a contract had been signed or agreed in principle and they're finalizing the terms. There was no contract. What the facts show is the decision to enter into a contract in the future, which turned out to be April 11th, was expressly conditioned upon getting the results of the diligence report. Uber expressly said, I'm not going to move forward until I get a chance to review the results of the diligence report. And that was all commissioned before the magistrate judge found on April 11th, when the actual term put-call agreement was signed, that there was a common interest. And notably, and I think this is in the court's findings as well, the Uber obtained an oral report of the findings that Strohs had before they signed the put-call agreement. The final report didn't issue until afterwards. But they received the results as to these bad acts before they signed the put-call agreement. But even so, don't those results have legal implications? It's what the whole idea of obtaining the Strohs report was aimed at. Was it not the legal consequences of what may or may not have transpired? Absolutely, Your Honor. So why isn't that privileged? Because the legal results might hurt Lewandowski. Lewandowski had a conflict in his own interests, because he wanted to go through and make a lot of money on this transaction. But they were asking him to disclose his prior bad acts. And so he didn't want to do that, but they did want him to do that. And that's what they're requiring him to do if he were to move forward with this proposed transaction. And it wasn't until the put-call and the common interest agreement, there's a written common interest agreement, were not signed until April 11th, after they received the results from Strohs of its investigation. And before that time, neither party was obligated to do anything except preserve some confidentiality and whatnot. But in terms of an agreement to move forward with the transaction, there was absolutely no obligation. I suppose I should address briefly in my 20 seconds the work product doctrine. And here as well, the challenge to the work product doctrine is a challenge to the fact findings of the district court. The district, the standard is not disputed. There's a waiver of the work product doctrine if you're, well, the law has potential adversaries. And there's no dispute about that being the law. But what the dispute is on this appeal is the fact findings of the district court, finding that Otto and Mr. Levandowski were actual adversaries at the time in which the term sheet was commissioned, the diligence report. And again, the challenge to that, the standard of review is clear error. And in this case, the facts simply do not support the court finding that it was clear error. Thank you, Your Honors. Thank you, Mr. Brogan. Mr. Ehrlich? Is it correct that you're relying only on the common interest doctrine, not work product or the other issues? No, no. We've briefed that in our briefs. Yes, they are in the briefs. But I thought we started out, I wanted to be sure that we were clear. We can't abandon those arguments. So you're not abandoning the Fifth Amendment argument? No. And I will address that in my brief time because I think it's relevant to a point that Mr. Verhoeven just made. But let me first say, I think listening to Mr. Verhoeven talk about the inherent adversity, how Mr. Lewandowski didn't want to reveal much and the other side wanted him to reveal everything, this proves too much because there are legions of cases in which commercial parties, one has to disclose to the other what's the litigation that they're facing or what's the exposure. You could say the same thing. That entity would like to disclose as little as possible.  And yet it is entirely uncontroversial that the common interest privilege can attach because it promotes the underlying social good of encouraging full and frank disclosure about potential legal risks and compliance with the law, even when there is partial adversity. Why isn't that report in the record under seal? Your Honor, my understanding, this is the first time I've been in the Federal Court of Appeals, Federal Circuit. My understanding is that record is available. It was submitted in camera to the court. It's available to the court. Could I? Of course. We did not make it part of the record because I didn't think it was possible to make an in-camera submission part of the record. But I was assured when I asked my colleagues and others that it was part of the record and certainly would be available to the court for its review. I would encourage the court to review it. Turning to the Fifth Amendment argument, the problem with saying that, well, why don't you just wait until the case is over, Mr. Lewandowski, and perhaps you can seek an appeal is because of the Fifth Amendment and the argument we made under Fisher v. United States. It is correct. If this is a valid common interest privilege, which we, of course, assert it was, then a client giving an attorney documents, devices, as part of a privileged relationship, that as to the straw subpoena, they are the agent of counsel for the common interest group. Under the Fifth Amendment, a client has a right to, if they're asserting the Fifth Amendment, to block production of those records from their counsel or the agent of their counsel. That's what Fisher v. United States stands for. It turns on the validity of the privilege. If we believe that the privilege is valid but we're told to wait, then the documents and information will be disclosed. If it's later determined that that was a violation of the privilege, it will also be determined that that was a Fifth Amendment violation, and as we've said repeatedly, castigar protections will apply. Which will mean, and I believe the court knows, that Judge Alsop has referred the matter for criminal prosecution. And if there's a violation of the attorney-client privilege here, that leads to a determination that the Fifth Amendment violation occurred, this will inevitably taint the record, and it raises castigar issues that we are advising the court are necessary to avoid. So that's why we can't simply wait to appeal later. Can I ask you, I had asked your adversary about the district court's review of the magistrate's decision on the Fifth Amendment, and the response, as I understand, is that your argument is based on Fisher, which is based on the attorney-client privilege, and because a magistrate judge can decide the attorney-client privilege, there's no problem here with respect to the district court delegation of the Fifth Amendment issue. to the magistrate judge. What's your response to that? Well, the standard of review argument comes from the Rivera-Guerrero case, and it's not entirely clear. We agree that the threshold issue is the attorney-client privilege. But what Fisher doesn't make crystal clear is whether the right at issue when a client has given records to the attorney is simply a matter of attorney-client privilege or a matter of the Fifth Amendment. And so there's a case in the Ninth Circuit called Seidman and Bancroft, which follows Fisher, which addresses the issue more in the terms of a pure Fifth Amendment issue, that the attorney stands in the shoes of the client when records are sought to be compelled from that attorney. So I think they have a fair point that is a little bit murky, the extent to which de novo review should occur. I don't think the cases are clear on that, but given the significance of the underlying constitutional right, we did ask the court to ask for the Strauss subpoena to engage in that inquiry de novo. And we think that would have been appropriate. Any more questions?